# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**UNITED STATES OF AMERICA,**   CASE NO. 3:22 CR 219

    Plaintiff,

v.   JUDGE JAMES R. KNEPP II

**CARL FLOYD,**

    Defendant.   MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Currently pending before the Court is *pro se* Defendant Carl Floyd's second Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A). (Doc. 125). The Government responds in opposition (Doc. 129-4) and Floyd replied (Doc. 132). For the reasons discussed below, Floyd's motion is denied.

### BACKGROUND

In May 2022, Floyd was indicted on one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1) and (2). (Doc. 7, at 1-2).

On February 8, 2023, Floyd entered a plea of guilty pursuant to a plea agreement. (Doc. 25). The facts underlying the crime to which Floyd pled guilty are as follows.[1] In June 2021, money and fentanyl were stolen from co-defendant (and Floyd's son) Marques Floyd by a drug user. Floyd and his son attempted to retrieve the stolen money and drugs by going to the drug user's residence.

---

1. These facts are taken from the Presentence Investigation Report. (Doc. 62, at 3-5). At sentencing, the Court asked Floyd if he saw "anything in [the PSR] that's not right?" and he said he did not. (Doc. 82, at 5-6); *see also* Doc. 25, at 6-7 (factual basis of plea agreement).

Once there, Floyd saw the drug user's girlfriend in the parking lot. Floyd exited the vehicle, pushed her inside, and sped away. As he drove, his son pistol-whipped the victim. The purpose of the kidnapping was to use the victim to obtain the stolen drugs and money. Floyd and his son took the victim back to the drug user's apartment in an attempt to lure him out. They were unsuccessful. The victim was ultimately held by Marques Floyd at his apartment against her will for seven days and supplied with drugs to ensure compliance.

On April 24, 2024, this Court sentenced Floyd to a term of 188 months' imprisonment followed by three years of supervised release. (Doc. 82).

On January 21, 2025, Floyd filed his first motion for compassionate release citing medical conditions and support from friends and family. (Doc. 107). After briefing, the Court denied that motion on April 24, 2025, finding that Floyd had not demonstrated extraordinary and compelling reasons for release, and that even if he could, the 18 U.S.C. § 3553(a) factors did not support release. (Doc. 119).

## DISCUSSION

Floyd moves this Court a second time for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). He contends ineffective assistance of counsel, a Fifth Amendment violation, his medical conditions, and prison conditions justify such relief. *See* Doc. 125, at 15-37. He further argues the § 3553 factors support compassionate release. *Id.* at 38-41. The Government responded, arguing that (1) Floyd did not exhaust his administrative remedies prior to filing this second compassionate release motion; (2) Floyd does not present an extraordinary and compelling reason to justify the remedy he seeks; (3) the § 3553(a) factors do not support release; and (4) the Court cannot consider Floyd's ineffective assistance of counsel or Fifth Amendment claims in this context. *See* Doc. 129-4. For the reasons discussed below, the Court denies Floyd's motion.

2

Ineffective Assistance of Counsel / Due Process Claims

In his motion, Floyd argues counsel he received ineffective assistance of counsel during the plea process and that his Fifth Amendment due process rights (based on the sufficiency of the evidence) were violated. *See* Doc. 125, at 15-23. The Government is correct, however, that such claims cannot be raised in a compassionate release motion, but must be raised in a habeas motion pursuant to 28 U.S.C. § 2255. *See United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2022) (en banc) ("[H]abeas is the appropriate place to bring challenges to the lawfulness of a sentence. . . . [W]e do not read 'extraordinary and compelling' to provide an end run around habeas."); *United States v. Bass*, 2022 WL 16752876, at *1 (6th Cir.) ("[A] compassionate-release motion is not the proper vehicle for raising claims regarding ineffective assistance of counsel."); *Spearman v. United States*, 43 F. App'x 906, 908 (6th Cir. 2002) ("[T]his court has consistently held that the proper vehicle for raising an ineffective assistance of counsel claim is in a motion to vacate under § 2255.").

Extraordinary and Compelling Reasons

Floyd next contends prison conditions and his medical issues are extraordinary and compelling reasons supporting compassionate release. *See* Doc. 125, at 24-7.

A district court generally lacks authority to "modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). 18 U.S.C. § 3582(c)(1) – the compassionate release provision upon which Floyd relies as the basis for his motion – states:

> **(c) Modification of an imposed term of imprisonment.** --The court may not modify a term of imprisonment once it has been imposed except that--
>
> **(1)** in any case--
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

3

>or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>>**(i)** extraordinary and compelling reasons warrant such a reduction;
>
>> \* \* \*
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1). Thus, release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction[,]" (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission[,]" and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054 (quotations omitted). District courts "may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others;" but "in granting a compassionate-release motion, district courts must address all three steps." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).[2]

Section 3582(c) does not define "extraordinary and compelling." But a Sentencing Commission policy statement addresses sentence reductions under 18 U.S.C. § 3582(c)(1)(A). The

---

2. As noted, an inmate must first exhaust all administrative remedies, *see* 18 U.S.C. § 3582(c)(1)(A). The § 3582(c)(1)(A) exhaustion rule is not jurisdictional, but is a mandatory claim-processing rule that must be enforced when invoked. *See United States v. Alam*, 960 F.3d 831, 833-36 (6th Cir. 2020). It may be waived or forfeited by the Government. *Id.* at 833-34. While the Government gestures towards authority for the proposition that Floyd's motion fails on exhaustion grounds, it nevertheless encourages this Court to reach the merits of the motion. *See* Doc. 129-4, at 4. The Court finds such encouragement constitutes an implicit waiver of the exhaustion requirement and proceeds to the merits of Floyd's motion.

policy statement identifies six circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. U.S.S.G. § 1B1.13(b)(1)–(6) (effective November 1, 2023).[3] These are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).[4] The policy statement describes medical circumstances under (b)(1) that may rise to the level of an "extraordinary and compelling" reason. These include where the individual is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" or where they are "suffering from a medical condition that requires long-term or specialized medical care that is not being provided

---

3. Until late 2023, the policy statement set forth in § 1B1.13 was not binding on this Court in evaluating motions for compassionate release filed directly by prisoners. The version of § 1B1.13 in effect until November 1, 2023, was adopted before the First Step Act, and therefore did not account for the fact that defendants are now permitted to file their own motions for compassionate release. The Sixth Circuit therefore held it was not an "applicable" policy statement under 18 U.S.C. § 3582(c)(1)(A), and "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts [had] discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519-20. The policy statement effective November 1, 2023, now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment." U.S.S.G. § 1B1.13 (emphasis added). As such, it is now an "applicable" policy statement with which any sentence reduction must be "consistent". 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Washington*, 122 F.4th 264, 266 (6th Cir. 2024) ("The amendment revised the Commission's position on what may count as an extraordinary and compelling reason for relief, regardless of who files the motion.").

4. The Sixth Circuit, however, recently held that § 1B1.13(6) is entirely invalid and a non-retroactive change in the law cannot constitute an extraordinary and compelling reason for release. *See United States v. Bricker*, 135 F.4th 427 (6th Cir. 2025).

and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(B) and (b)(1)(C).

It is the movant's burden to establish he is entitled to a compassionate release or a sentence reduction. *Alam*, 960 F.3d at 836. The Court addresses the arguments Floyd makes as to his specific medical conditions and his specific treatment in prison. Floyd contends FCI Loretto, where he is incarcerated, has inadequately trained medical staff. (Doc. 125, at 24-26); *see also id.* at 31 ("They not only suffer from a shortage of staff, the staff that they do have is either incompetent or they simply don't care."). He asserts the facility is staffed by a single physician, who he contends (without support) is not qualified to treat adult patients, and three Physicians Assistants. *Id.* at 24-25. As to his own medical conditions, Floyd argues that the BOP is incapable of treating "or simply ignores" his hypertension and hyperlipidemia. *See id.* at 26-28. He further cites diagnoses of angina pectoris and atherosclerosis. *Id.* at 28. Finally, Floyd complains of inadequate blood work, anomalies in his blood work, and insufficient follow-up. *Id.* at 29. He states "no one is paying attention" to these things. *Id.*

Although Floyd complains about a lack of access to medical care and the inadequacy of that care, and Floyd certainly has diagnosed medical conditions, as with his last motion, the Court finds Floyd's medical records document that these conditions are treated within the BOP. *See* Doc. 129-3 (sealed medical records). Floyd has been seen regularly and prescribed medication and further testing for, among other things, his cited conditions of hypertension, hyperlipidemia, angina pectoris, coronary angioplasty, and atherosclerosis. *See id.* Indeed, as the Government points out, during a July 2025 encounter for a cough, Floyd denied other symptoms and stated: "Other th[a]n this cough I feel great." *Id.* at 5. Indeed, although Floyd specifically complains that his blood pressure was not being adequately monitored, in a July 2025 note, the provider indicated

6

Floyd would be placed on weekly blood pressure checks for monitoring. *Id.* at 7. In short, the Court finds Floyd has not demonstrated that his medical conditions have not been, or cannot be, treated within the prison system. *See, e.g.*, *See United States v. Mackety*, 854 F. App'x 36, 38 (6th Cir. 2021) (affirming denial of compassionate release where nothing in the record showed BOP was "unable to manage" defendant's hypertension, "even during the Covid-19 pandemic"); *United States v. DeJournett*, 2024 WL 1580102, at *5 (N.D. Ohio) (denying motion for compassionate release because defendant "failed to carry his burden of demonstrating that he is not being provided with the specialized medical care that he requires"); *United States v. Blackwell*, 2024 WL 4534259, at *3-4 (N.D. Ohio) (denying motion for compassionate release where petitioner did not demonstrate evidence that his condition was not manageable in the prison environment or that he was not receiving appropriate medical care); *United States v. Walker* 2022 WL 834008, at *3 (E.D. Mich.) (denying motion for compassionate release where there was "no indication that these issues cannot be treated and managed in the prison setting").

    The Court finds Floyd's conditions are not uncommon and neither an extraordinary nor compelling reason justifying release. Floyd has not demonstrated he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover" or is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." U.S.S.G. §§ 1B1.13(b)(1)(B) and (b)(1)(C).

    Much of Floyd's motion describes general inadequacies at Bureau of Prisons facilities. *See, e.g.*, Doc. 125, at 25 (citing a report that the BOP has failed to screen many inmates for colorectal

7

cancer);[5] *id.* at 29-31 (describing conditions at FCI Devens in Massachusetts). Floyd also complains about prison conditions, noting that the facility has spent much time in lockdown due to COVID-19 "with little or no access to recreation, church, education, the law library, or programming. (Doc. 125, at 32).[6] He further contends the facilities are overcrowded, with inadequate space and ventilation, as well as fewer shower and toilet facilities than American Correctional Association Standards dictate. *Id.* at 35-37. Floyd has not explained why these prison conditions amount to an extraordinary and compelling basis for relief in his specific situation. *See, e.g.*, *United States v. Reese*, 2022 WL 737501, at *2 (E.D. Mich.) (rejecting a defendant's allegation that his release is warranted "because of general prison conditions and restrictions caused by the pandemic," when "[h]e has not articulated why living conditions generally applicable to all prisoners at his facility, such as lockdowns and delayed mail, constitute an extraordinary and compelling basis for his release") (collecting cases); *United States v. Pelletier*, 2020 WL 6135052, at *2 (M.D. Tenn.) ("These arguments about the general prison conditions, faced by every inmate confined at FCI Memphis with Mr. Pelletier, and likely at all other BOP facilities in the country, are not sufficient, without more, to establish an extraordinary and compelling reason specific to Mr. Pelletier.").

The Court therefore finds Floyd has not established an extraordinary and compelling circumstance to support release.

---

5. As the Government points out, Floyd's medical records demonstrate he has received colorectal cancer screening in prison. (Doc. 129-3, at 12).
6. Further, to the extent Floyd attempts to independently challenge his conditions of confinement, *see* Doc. 125, at 34-35 (citing Eighth Amendment standard), a motion for sentence reduction or compassionate release "is not the appropriate mechanism or vehicle to raise such a claim of alleged constitutional violations." *United States v. Pooler*, 2020 WL 7046964, at *7 (S.D. Ohio) (collecting cases).

§ 3553(a) Factors

Even if Floyd could clear the initial hurdle of demonstrating an extraordinary and compelling reason, the Court would still deny his motion because the sentencing factors in § 3553(a) do not favor release. *See United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a) and directing district courts to consider all relevant statutory factors).

Nothing about the intervening ten months between the Court's ruling on Floyd's prior motion for compassionate release has changed the Court's view of the § 3553(a) factors:

> Specifically, "the nature and circumstances" of Floyd's offense were serious and weigh heavily against release. 18 U.S.C. § 3553(a)(1). Although Floyd's son, Marques, may have been the main actor/instigator and committed additional crimes against the victim, Floyd himself was an active participant in a kidnapping in which the victim was abducted and held against her will.
>
> As it did at the time of sentencing, the Court must consider the goals of reflecting the seriousness of the offense, respect for the law, providing just punishment, protecting the public, and deterring Floyd and others from future criminal conduct. 18 U.S.C. § 3553(a)(2). The Court finds ordering Floyd's release would undermine each of these sentencing goals.

(Doc. 119, at 7). This remains true despite Floyd's current attempts to dispute or recharacterize the underlying facts and minimize his involvement.

Floyd further argues that "courts have consistently found that rehabilitation is an important element in determining whether or not relief is appropriate." (Doc. 125, at 38). He asserts he has sought to improve himself while incarcerated by taking classes, working as an orderly, and mentoring young inmates and notes the BOP has determined him to have a low risk of recidivism. *Id.* at 41. The Court commends Floyd on his efforts toward improving himself while incarcerated. However, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Further, he contends that the simple passage of time and aging erode the dangerousness analysis. *Id.* at 40.

9

After considering all the § 3553(a) factors, the Court again finds they do not support release.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Floyd's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 125) be, and the same hereby is, DENIED.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Date: February 10, 2026